UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRENDA L. MILLENDER, Plaintiff, vs. TALLADEGA CITY BOARD OF EDUCATION, Defendant. | CV-99-PT-3208-E |

ENTERED
SEP 2 8 2000

## MEMORANDUM OPINION

This cause comes to be heard upon defendant Talladega City Board of Education's motion for summary judgment filed on May 4, 2000. The court will not unnecessarily repeat the well-known standards applicable to consideration of summary judgment motions. The issue as to each claim is whether there is a genuine issue of law or fact.

### FACTS

On December 2, 1999, plaintiff Brenda L. Millender ("plaintiff") filed suit against defendant Talladega City Board of Education ("defendant") for race and national origin discrimination under 42 U.S.C. § 2000e *et. seq.* ("Title VII") and 42 U.S.C. § 1981, and for defamation under the common law of Alabama. The plaintiff claims that the defendant discriminated against her because of her French/Canadian Indian national origin and her interracial marriage by refusing to employ her in the four positions in the Talladega City School System for which she applied between May 21, 1998 and August 10, 1999. The plaintiff also

claims that the defendant defamed her when it told the EEOC in its position statement that the plaintiff had not been hired for the bookkeeping position because she told the principal of Talladega High School, Ray Smoot, that she no longer wished to be considered for the position.

The plaintiff graduated from high school in Holyoke, Massachusetts. After graduation in 1978, she went into the armed services for three years, where she worked as a personnel specialist. It was in the Army that the plaintiff met Herman Millender, an African American man, now her husband of twenty-one years. In 1981, after receiving an honorable discharge from the Army, the plaintiff enrolled in Talladega College. She earned a degree in business administration in 1986, and is currently enrolled in a Master's program for public administration and emergency management.

While she was earning her undergraduate degree, the plaintiff enrolled in the cooperative education program, in which she combined academic study with work experience. In the cooperative education program she worked as an air traffic controller's aid. The plaintiff also attended several computer classes and workshops. After receiving her undergraduate degree, she found employment at Talladega College as a financial aid coordinator from 1986 to 1988, where she determined loan eligibility, managed loan files, and collected loan payments. In 1988, the plaintiff transferred to the Talladega College computer center, where she managed data flow, trained the administrative staff and other offices to use their computers, maintained administrative databases, ordered supplies, and paid bills. Millender depo., p. 29. In 1994, after six years in the computer center, the plaintiff transferred back to the financial aid office, where she has remained a loan coordinator to the present.

The four positions for which the plaintiff was not hired are: Secretary, Talladega High

School; Bookkeeper, Talladega High School; Head Bookkeeper/Financial Custodian, Talladega City Schools; and School-to-Career Job Resource Specialist, Talladega High School Career Tech. Whenever a vacancy occurred in the school's jobs, the school system would post a vacancy notice that was also advertised to the public in the local newspaper. Thacker, depo. p. 13-32. The secretarial position, likely the first of the subject positions to be advertised, was posted on May 21, 1998. The qualifications for the secretarial position listed on the vacancy notice are: "formal training in computers, general office procedures, and typing. The secretary must demonstrate language skills, knowledge of office machines, and the ability to greet the public." Plaintiff's Exhibit A. The bookkeeper position, whose vacancy notice is undated, was likely posted around the same time because it and the secretarial position shared the same tentative application deadline, June 3, 1998. The qualifications for the bookkeeping position that were listed on the vacancy notice are: "should have formal training in bookkeeping procedures, knowledge of computer entry, developing purchase orders, budgeting, budget allocation, the standard procedures of accounting, and general office procedures." Plaintiff's Exhibit G.

The plaintiff interviewed with Ray Smoot, the principal of Talladega High School, around June 16, 1998, for both the secretarial and bookkeeping positions. Plaintiff's Exhibit L. After interviewing all of the applicants for the two positions, Smoot forwarded the names of his top four choices to the superintendent's office. The plaintiff was one of Smoot's top four choices. The plaintiff later interviewed with Mabel Gunter, a senior bookkeeper for the Talladega school system who was requested to interview the top four bookkeeper applicants. Gunter, Affidavit. After interviewing the applicants, Gunter sent a letter to Dr. Larry Thacker, the superintendent of the school system, in which she recommended Sue Gallahar, another of the

top four applicants, for the position. Id. Gallahar subsequently was hired as bookkeeper.

On July 27, 1998, more than a month after the plaintiff had interviewed for the secretarial position and almost two months after the June 3 tentative application deadline, Mary Catherine Klein submitted an application for the secretarial position. Klein was recommended for the position the same day that she applied. Klein subsequently was hired as secretary.

The next position for which the plaintiff applied, posted on July 14, 1998, was that of Head Bookkeeper/Financial Custodian for the Talladega City School System. The qualifications for Head Bookkeeper/Financial Custodian listed on the vacancy notice are: "The Bookkeeper must have a strong accounting background with experience and formal training in bookkeeping procedures, knowledge of computer entry, budget preparation, budget allocation, developing purchase orders and state/federal funding for schools. Experience with MCAI Budgetary Accounting system preferred but not required." The plaintiff interviewed for the position with Thacker and one of his assistants. During the interviews, Thacker and his assistant asked each candidate for head bookkeeper a series of pre-written questions and ranked their answers on a grading system. After interviewing the applicants, they selected the plaintiff as their second choice and Lisa Dickerson as their first choice. Dickerson subsequently was hired as Head Bookkeeper/Financial Custodian.

After being turned down for the third position, the plaintiff filed a charge of discrimination with the EEOC, alleging that she had been discriminated against because of her interracial marriage. The formal charge was issued to the defendant on October 20, 1998. In the EEOC charge, the plaintiff alleged only that the defendant discriminated against her because of her interracial marriage. While she mentioned that she had informed the defendant that she was

4

of French/Indian descent, she did not specifically claim in the EEOC charge that her national origin was a basis for the alleged discrimination.

On May 3, 1999, the defendant posted a notice for the School to Career Job Resource Specialist position. The qualifications for the School to Career Job Resource Specialist, listed on the vacancy notice, are: "Bachelor's degree in Business or related area or equivalent work experience." The plaintiff applied for the position on July 26, 1999, two days before the tentative application deadline. After the plaintiff submitted her application, the defendant continued to accept applications through late August. This time, plaintiff was neither given an interview nor recommended to the superintendent for further action on her application.

## DISCUSSION

The plaintiff alleges in her complaint that the defendant discriminated against her because of her interracial marriage and her national origin. She bases her national origin claim on a question that she alleges that Smoot asked her during the bookkeeper/secretary interview: "Oh, by the way, what are you?" The plaintiff claims that Smoot's question referred to either her interracial marriage or her national origin, and that she informed him that she was French Canadian/Indian. Smoot denies asking the question. Smoot, affidavit. With regard to the plaintiff's interracial marriage, Thacker admits knowing of it prior to the time that he decided not to recommend the plaintiff as his first choice for Head Bookkeeper/Financial Custodian. Thacker, depo. p. 48-49. The plaintiff claims that Smoot knew of her interracial marriage before he interviewed her for the secretary/bookkeeping position. Millender, depo. p. 49-50. Smoot does not deny knowing the race of the plaintiff's husband. However, Gunter, who conducted the plaintiff's second interview for the secretarial position, denies knowing of plaintiff's national

5

origins or interracial marriage prior to the commencement of this action. Gunter, affidavit.

Additionally, the defendant claims that the plaintiff was not hired for the bookkeeping position because on June 25, 1998, she notified Smoot that she no longer wanted to pursue the position. Plaintiff's exhibit L; Thacker, depo. p. 51-52. The plaintiff denies telling Smoot that she did not want to be considered for the bookkeeping position, and claims that, by informing the EEOC that she had said that she no longer wanted the position, the defendant defamed her.

In its response to the defendant's motion for summary judgment, the plaintiff alleges that Dr. Trellys Morris, who conducted the hiring process for the School-to-Career position, not only discriminated against her based on her race and national origin but also retaliated against her for filing an EEOC charge against the school system. The plaintiff's complaint contains only the allegations of race/national origin discrimination against Morris, not retaliation. The plaintiff claims that in a telephone conversation on August 10, after receiving her application, Morris told her that the position had been filled, although in reality the position was still vacant. Morris denies knowledge of the plaintiff's national origin, interracial marriage, or EEOC charge prior to the commencement of this action. Morris, depo. p. 60; affidavit, p. 3. Furthermore, Morris denies telling the plaintiff that the position had been filled. Id., p. 60-61.

## ARGUMENT

### The plaintiff's Title VII and Section 1981 claims

The defendant argues that because the plaintiff's EEOC charge does not specifically charge the defendant with national origin discrimination, the plaintiff cannot now claim national origin discrimination in her complaint. While the defendant acknowledges that a Title VII complaint can encompass allegations of discrimination that are related to allegations contained in

6

the EEOC charge and that grow out of the charge, it argues that the plaintiff's allegations of national origin discrimination are not sufficiently related to her allegations of race discrimination. The defendant characterizes the plaintiff's allegation of national origin discrimination as a different alleged act of discrimination, even though it arises from the same set of facts and circumstances from which the plaintiff's allegation of race discrimination arises– the defendant's four refusals to hire the plaintiff.

The plaintiff argues that the complaint's national origin discrimination allegations are sufficiently related to the EEOC charge's allegations of race discrimination. The plaintiff claims that it is difficult to determine whether discrimination against a Native American is based on race or national origin, and points to Scott v. Eversole Mortuary, 522 F.2d 1110 (9th Cir. 1975), in which the court allowed a Native American to state a claim for race discrimination under § 1981. The plaintiff further emphasizes the notice-providing function of an EEOC charge, and argues that because her EEOC charge put the defendant on notice that she was claiming that it had discriminated against her, even though she specifically alleged only that it discriminated against her because of race, she should now be able to claim national origin discrimination as well. The plaintiff cites Gomez v. Amoco Oil Co., 767 F. Supp. 191 (N.D. Ind. 1991), in which the court found that although the plaintiff had not used the specific words "denied a promotion," the facts described in the EEOC charge sufficiently put the defendant on notice that the plaintiff based the charge of discrimination on a denied promotion. Plaintiff argues that, like the charge in Gomez, the paragraph in her EEOC complaint that contains "I informed Mr. Smoot that I was of French/Indian descent" is sufficient to put the defendant on notice that she based her allegations of discrimination in part on national origin.

The defendant next argues that the plaintiff cannot prove a prima facie case of either national origin discrimination or race discrimination under the McDonell-Douglas framework[1] because she cannot show that she was qualified for any of the four positions. With regard to the secretarial position, the defendant additionally argues that the plaintiff cannot show that she applied for the position because she cannot remember whether she submitted an application. With regard to the Head Bookkeeper/Financial Custodian position, the defendant additionally argues that the plaintiff cannot show that the position was given to someone outside her protected class because the individual who eventually was hired, Lisa Dickerson, is a parent of bi-racial children.

To make out a prima facie case of discriminatory refusal to hire under either 1981 or Title VII, a plaintiff must show:

    1. That she is a member of a protected class;
    2. That she applied and was qualified for the job for which the defendant was seeking applicants;
    3. That despite her qualifications, she was not hired; and
    4. That after her rejection, the position remained open or the defendant filled the position with persons outside the plaintiff's class.

Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999), citing Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028 (11th Cir. 1987)(per curiam).[2]

The defendant concedes that the plaintiff, as a spouse in an interracial marriage, is a

---

[1] The plaintiff has introduced no evidence of statements so egregious that they rise to the level of direct discrimination. See Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)(quoting Carter v. City of Miami, 870 F.2d 578, 581-582 (11th Cir. 1989)).

[2] The essential elements, burdens of proof, and analyses for Title VII and section 1981 disparate treatment discrimination cases are identical. Standard v. A.B.E.L. Servs., Inc., 161 F. 3d 1318, 1330 (11th Cir. 1998)("therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

8

member of a protected class. The defendant contends, however, that the plaintiff was not qualified for any of the positions, and cites the portions of the decision-makers' depositions in which they describe the qualifications of the positions that the plaintiff sought.[3] This argument is somewhat disingenuous when, according to the defendant, the plaintiff at the very least was sufficiently qualified for the first three positions to be always ranked within the top four "finalist" applicants. See Plaintiff's exhibits C, L, M; Thacker, depo. 30 (plaintiff's exhibit 33). In the case of the School-to-Career position, the qualifications listed on the vacancy notice were "Business degree or related work experience." That the plaintiff had a business degree was clearly indicated on the applications that she submitted to the defendant. Plaintiff's exhibits H, Z. The defendant appears to confuse the concept of "unqualified" with that of "not as qualified as someone else." The first concept implicates an element of the prima facie case; the second implicates the defendant's burden to provide a legitimate, non-discriminatory reason for its actions. The plaintiff has submitted ample evidence that the defendant considered her to be at least minimally qualified for the first three positions for which she applied and that she was qualified for the fourth position as well.

Also questionable is the defendant's assertion that the plaintiff did not apply for the secretarial position. In its position statement submitted to the EEOC on January 19, 1999, the defendant claims that the plaintiff applied for the secretarial position and was "ultimately one of the top four applicants submitted, in no particular order, by the Principal to the Superintendent." Plaintiff's exhibit C, p. 3. In his deposition, Thacker, describing Smoot's statement that the

---

[3] It is not clear that these qualification requirements were well-established at the time of the vacancies.

plaintiff wanted to withdraw her bookkeeper application, claimed that "he told me that Ms. Millender had withdrawn her application for the bookkeeping position but wanted to continue her application in the secretarial position, and I said okay." Thacker, depo. 52. Smoot himself, in a statement submitted to the EEOC in response to the plaintiff's charge, states that "On June 16, 1998, Ms. Brenda Millender interviewed with me for a secretary/receptionist position . . ." Plaintiff's Exhibit L. Both the plaintiff and the defendant have provided sufficient evidence that the plaintiff applied for the secretarial position.

The defendant's next argument is that the plaintiff cannot show a prima facie case with regard to the head bookkeeper/financial custodial position because she cannot show that the position was filled by someone outside the plaintiff's protected class. The defendant hired Lisa Dickerson, a parent of biracial children. The plaintiff contends that she can still establish a prima facie case of discrimination even if the defendant eventually hired a member of her protected class, and cites Edwards v. Wallace Community College, 49 F.3d 1517 (11th Cir. 1995) for support. The Edwards court indeed found that a plaintiff suing for discriminatory discharge does not *always* have to meet the fourth element of the McDonnell Douglas test if the plaintiff can show that the fact that the defendant replaced him with another member of the protected class does not overcome the inference of discrimination otherwise created by the plaintiff's evidence. 49 F.3d at 1521. The court listed several factors that a district court may consider: "the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an EEOC complaint, and, if the hired person had a history with the employer, whether it was a positive history." Id. The plaintiff further argues that these factors are more appropriate for the trier of fact to consider than for the court.

The defendant next claims that even if the plaintiff can show each essential element of the prima facie case, her prima facie case still should fail because she has offered no evidence indicating the failure to hire her was motivated by a discriminatory reason. However, if a plaintiff shows each essential element of the prima facie case, she has already established the facts necessary to give rise to the initial prima facie inference of discrimination. Lathem v. Department of Children & Youth Servs., 172 F.3d 786, 792 (11th Cir. 1999). The initial inference automatically arises once the essential elements of the prima facie case are established. Crawford v. Western Electric Co., 745 F.2d 1373, 1376-1377 (11th Cir. 1984), citing Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1093 (1981). The burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for not hiring the plaintiff. Standard, 161 F.3d at 1331. The defendant's articulated legitimate, non-discriminatory reasons for not hiring the plaintiff are that she was not the best applicant for any of the positions and that the applicants who were hired were more qualified and/or experienced than she. The burden thus returned to the plaintiff to show that the defendant's legitimate, nondiscriminatory reason is but a pretext for discrimination. Id.

The defendant argues that the plaintiff cannot prove that its reasons for not hiring her are a pretext for discrimination. It claims that she has offered no evidence to indicate that the failure to hire her was motivated by a discriminatory reason. The defendant points out that "Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color or national origin." McCarthney v. Griffin-Spalding County Bd. of Educ., 791 F.2d 1549, 1552 (11th Cir. 1986).

The plaintiff argues that the evidence shows that the criteria that the defendant used to

11

hire applicants is vague and subjective. She claims that subjective job qualifications are especially suspect when they are exercised by members of an all-white executive or supervisory staff. The plaintiff asserts that because Smoot, Thacker, Gunter, and Morris are all white, the subjective criteria that they used in their hiring decisions should be more strictly scrutinized.[4]

The court will briefly consider the criteria used by the defendant in its hiring decisions. With regard to the secretarial position, Thacker states that "I recommended Ms. Mary Catherine Klein . . . based upon her fourteen years of experience as secretary to a High School Principal, her references, and her . . . application." Thacker, affidavit p. 2. Thacker states with regard to the bookkeeper position that "[b]ased upon Ms. Gallahar's fifteen years of experience as a secretary and a bookkeeper, her familiarity with public and non-public funds . . . and her prior work experience with the school system's accountants in the auditing of financial records, I recommended [her]." Id., p. 2-3. With regard to the Head Bookkeeper/Financial Custodian position, Thacker states that "I recommended . . . Lisa Dickerson based upon her experience, training, recommendations, and her interview." Id., p. 3. Concerning the School-to-Career position, Morris stated that "I looked for applicants who had some teaching experience and experience linking education with business needs. I was interested in applicants who had an understanding of both businesses and education . . . ." Morris, affidavit, p. 2.

The plaintiff argues that she has introduced sufficient evidence to make a "simple" showing of pretext. She has presented evidence that in the interview for the bookkeeping position, Smoot asked "What are you?," a question that may have referred to the plaintiff's

---

[4] In support of this proposition, the plaintiff cites Phillips v. Joint Legislative Committee on Performance & Expenditure Review, 637 F.2d 1014 (5th Cir. 1981).

national origin or race. She has presented evidence that she was qualified for the positions for which she applied. She contends that she never told Smoot that she did not want to be considered for the bookkeeping position. She contends that Morris lied to her by telling her that the School-to-Career position was filled when it really was not. She contends that she was just as qualified, if not more qualified, than the applicants that the defendant hired and interviewed, and has provided some of their job applications for support.

The defendant further argues that the plaintiff's allegation that it retaliated against her for filing the EEOC charge by refusing to interview her for the School-to-Career position should be barred as untimely. The defendant maintains that even if the claim is not barred, the plaintiff cannot establish a prima facie case of retaliation because she has introduced no evidence that the person making the hiring recommendations, Dr. Morris, was aware of the plaintiff's "protected expression," the EEOC charge. In her motion in opposition to summary judgment, the plaintiff has argued that the "temporal proximity" of the defendant's refusal to interview her to her filing the EEOC charge can give rise to an inference of causation sufficient to satisfy the plaintiff's prima facie burden. She cites Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) for support.

**The plaintiff's constitutional claims**

In its reply to the plaintiff's motion in opposition to summary judgment, the defendant argues that the plaintiff's allegations that the defendant violated the Equal Protection Clause of the Fifth and Fourteenth Amendments fail to state a claim upon which relief can be granted, and therefore should be dismissed. In her complaint, the plaintiff mentions the Equal Protection Clause of the Fifth and Fourteenth Amendments only in the prayer for relief at the end of the complaint. The defendant has correctly noted that the plaintiff did not mention 42 U.S.C. §

13

1983, the "vehicle" used to sue under the Constitution. The defendant, in its answer to the complaint stated that the plaintiff has failed to state a cause of action that would grant her any relief claimed in the complaint. The plaintiff did not address the constitutional claims in her motion in opposition to summary judgment. Indeed, the only time the Equal Protection claims appear is in the single paragraph in the prayer for relief in the plaintiff's complaint. Plaintiff has not broadcast a claim pursuant to § 1983. She cannot maintain a claim pursuant to § 1981.[5]

**The plaintiff's defamation claim**

The plaintiff claims that when the defendant represented to the EEOC that the plaintiff wished to be removed from consideration for the bookkeeper position, it "falsely and maliciously" presented her "in a false light" and "misrepresent[ed] a material fact." The defendant has treated this claim as one for defamation because it does not fall into the four categories of the Alabama tort of invasion of privacy.[6] The defendant argues that summary judgment is appropriate because its statement to the EEOC was true. It also argues that its statement to the EEOC is absolutely privileged because it was made in good faith in a federal labor dispute resolution proceeding, a type of process for which, the defendant asserts, the Alabama Supreme Court has carved out privileges in the past.[7] In the alternative, the defendant argues that the statement deserves the conditional privilege developed by the Alabama Supreme

---

[5] See Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000).

[6] The four categories of invasion of privacy in Alabama are: 1) Intrusion upon solitude; 2) Indecent publicity; 3) Presentation of the plaintiff in a false light in the public eye; 3) Appropriation of personality for commercial use without consent. Phillips v. Smalley Maintenance Servs., Inc., 435 So. 2d 705, 708 (Ala. 1983).

[7] The defendant cites Barnett v. Mobile County Personnel Board, 536 So. 2d 46, 52 (Ala. 1988) and Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988) for support.

14

Court for statements that are "prompted by duty owed either to the public or to a third party, or . . . one in which the party has an interest, and [are] made to another having a corresponding interest . . . if made in good faith and without malice." Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1094 (Ala. 1988). The defendant further contends that any statements made from Smoot to Thacker cannot be defamatory because communications between an entity's management regarding the entity's business do not constitute publication. Furthermore, it argues that it cannot be held liable for defamation because the statement "[the plaintiff] told Mr. Smoot that she no longer wanted to be considered for the bookkeeping position" is incapable of a defamatory meaning as a matter of law because it does not tend to impugn the plaintiff's reputation or deter third parties from dealing with her.

The plaintiff has attempted to rebut only the defendant's absolute privilege argument. It does not address the defendant's argument that the statement in question is incapable of a defamatory meaning as a matter of law.

## CONCLUSION

The court first concludes that the "defamation" claim is frivolous and will be dismissed.

The court will separately address each of the other claims. The court initially notes generally, however, that there is no direct evidence of discrimination, nor is there any statistical evidence to support any claims of discrimination or retaliation. The court concludes that the plaintiff cannot maintain the national origin portion of her claim because she made no such assertions in her EEOC charge. Further, the court will assume that the plaintiff has proved a

15

prima facie case as to each of her discriminatory hiring claims.[8] The court also notes that in cases such as this, where the defendant has made judgment decisions with regard to the relative qualifications the issue is whether there is a reasonable inference that the decisions were made in bad faith based on discriminatory animus. If the employer selects the person it believes is best qualified, "an argument of pretext ordinarily will fail." <u>Clark v. Huntsville City Bd. of Educ.</u>, 717 F.2d 525, 527 (11th Cir. 1983).

**Retaliation claim**

The court will dismiss the retaliation claim because it was not alleged in the complaint. Furthermore, there is no evidence that Morris knew of the EEOC charge.

**Secretarial position**

The court will deny the defendant's motion as to the secretarial position. While it appears that Klein was likely better qualified than the plaintiff, the court notes that the plaintiff was not hired during the period scheduled for consideration of the applicants and the position remained vacant. Klein applied and was immediately hired well after the deadline for the submission of applications stated on the vacancy notice.

**Bookkeeping position**

Even assuming that the plaintiff was qualified, which is certainly not clear, there is no evidence that the decision by Mabel Gunter to recommend Sue Gallahar was made in bad faith or based on any discriminatory animus. There is no evidence that Gunter was aware of the plaintiff's interracial marriage. She denies knowing of it. Gallahar appears to have been

---

[8] The court does so even though her qualifications for the two bookkeeping positions are suspect.

obviously better qualified. This claim will be dismissed.

**Head Bookkeeper/Financial Custodian position**

There is no evidence that the decision to hire Lisa Dickerson was made in bad faith or based on any discriminatory animus. She had bi-racial children, placing her within the plaintiff's protected class. The plaintiff's qualifications for head bookkeeper are even more suspect than her qualifications for subordinate bookkeeper. They are minimal at best. She apparently had no experience as an accountant or as a bookkeeper except, perhaps, incidental to another job. This claim will also be dismissed.

**School to career job specialist position**

The court will deny the defendant's motion for summary judgment as to this claim. The plaintiff appears to have been qualified for the position. The decision not to interview her displays an apparent subjectivity.

This 28TH day of September

**ROBERT B. PROPST**

**SENIOR UNITED STATES DISTRICT JUDGE**